Walter R. KELLER, Appellant,

v.

F. David MATTHEWS, Secretary of
Health, Education and
Welfare, Appellee.

No. 76–1318.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 6, 1976.

Decided Oct. 26, 1976.

Michael A. Price, Cape Girardeau, Mo.,
for appellant.

Barry A. Short, U.S.Atty., and Joseph B.
Moore, Asst. U.S.Atty., St. Louis, Mo., for
appellee.

Before BRIGHT, STEPHENSON and
HENLEY, Circuit Judges.

PER CURIAM.

Walter R. Keller applied for Social
Security disability insurance benefits on
July 18, 1973, asserting that he had not
worked since December 20, 1972, and that
his medical condition had prevented him
from working at any gainful occupation
ever since that time. The Social Security
Administration denied him benefits and he
thereafter sought judicial review of that
action in the United States District Court.
The district court, upon a magistrate's rec-
ommendation and after review of the
record,[1] denied Keller any relief and Keller
brought this timely appeal. We have care-
fully reviewed the record in this case as
submitted to the Social Security administra-
tive law judge, and as supplemented and
thereafter reviewed by the Appeals Council
of the Social Security Administration. Sub-
stantial evidence supports the determina-
tion denying Keller disability insurance
benefits under the Social Security Act, and

---

1. *See Mathews v. Weber*, 423 U.S. 261, 271, 96
S.Ct. 549, 46 L.Ed.2d 483 (1976), in which the
Supreme Court approved reference of Social
Security benefit cases to a magistrate, stating,

"The authority—and the responsibility—to
make an informed final determination, we em-
phasize, remains with the judge." *See also*

accordingly, we must affirm the judgment of the district court.[2]

We summarize the evidence. Keller's medical problems apparently originated from injuries received in a headon automobile collision which occurred on September 22, 1972. In that accident he sustained painful injuries to his face and nose, later requiring corrective surgery, and some injury to his right wrist and to his back. Keller was not immediately hospitalized following the accident. His personal physician on examining the back the day after the accident found no sign of nerve root compression and recommended conservative treatment.

Keller convalesced at home for approximately five weeks and then returned to employment as a fabricator of hand railings, with the Tennessee Valley Authority. Keller's principal occupation otherwise had been as a pipefitter-welder, an occupation requiring heavy lifting. At the hearing before the Social Security administrative law judge, Keller described his work in fabrication of railings as light work. Apparently because of economic conditions, and his lack of seniority, the Tennessee Valley Authority laid Keller off on December 20, 1972. That day marked the last day of Keller's gainful employment.

Following the layoff, Keller's personal physician referred Keller to Dr. Thomas G. Otto, an orthopedic physician, at Cape Girardeau, Missouri. Dr. Otto, following x-ray examination, observed some indication of an old compression injury at the site of the ninth and tenth dorsal vertebrae. He prescribed back exercises for Keller and noted the patient could do light work. Keller continued seeing Dr. Otto until April of 1973. As of that date, Dr. Otto recommended that Keller should try to return to employment and that he should return in six weeks for a reexamination.

Keller's condition did not improve, and later, in April, he went to Memphis for a neurological consultation. The neurologist called for a neurosurgical consultation from Dr. Jorge Picaza, also of Memphis, Tennessee. Dr. Picaza performed a lumbar myelogram. This test indicated some lumbar disc pathology. Thereafter, Dr. Picaza performed surgery in the lumbar spine area, decompressing the nerve roots at the L-3, L-4, and L-5 interspaces.

On visual examination of the lower spine, the surgeon found that at the L-4 interspace the disc appeared to be bulging and probably compressing the nerve root to a significant degree. His examination report relates that "No considerable amount of compression was detected in the other lower spaces, to justify the patient's symptoms." Dr. Picaza described Keller's post-operative course as satisfactory and in a report prepared six months following the surgery, Dr. Picaza indicated that Keller "should find an activity where he would not depend on his back to make his living, otherwise probabilities are that the back ailment should reappear in time and further surgery including fusion may have to be contemplated." This physician rated Keller as possessing a partial disability of 18 percent of the body as a whole.

The record also contains medical opinions submitted by other physicians who had examined Keller. While these physicians indicated that Keller suffered from a disability which prevented him from working, the essential pathological findings were consistent with those reported by Dr. Picaza, the operating surgeon. These physicians limited their opinion on disability, in part, to expressing the view that Keller could not be gainfully employed where the work required a strong back and noting Keller's low tolerance for strenuous activities.

*Reciprocal Exchange v. Noland, et al.,* 542 F.2d 462 (8th Cir. 1976).

**2.** 42 U.S.C. § 405(g) provides in part: "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *." *See Richardson v. Pe-*

*rales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Klug v. Weinberger,* 514 F.2d 423, 424 (8th Cir. 1975); *Yawitz v. Weinberger,* 498 F.2d 956, 959 (8th Cir. 1974); *Celebrezze v. Bolas,* 316 F.2d 498, 500–01 (8th Cir. 1963).

At the hearing before the administrative law judge, a vocational expert, Dr. Thomas Boyd, testified that light work consists of lifting up to 20 pounds and carrying up to 10 pounds with considerable walking and standing. He described sedentary work as that requiring lifting up to 10 pounds with occasional walking and standing.[3]

In response to hypothetical questions propounded by the administrative law judge, Dr. Boyd testified that based on Keller's age, education, background, and training, Keller was vocationally qualified to perform either light or sedentary work, assuming that he was physically able to perform the tasks called for by such jobs. He also testified to the availability of light and sedentary work in the area.

Following the hearing, the administrative law judge made these crucial findings:

The claimant has an unstable lumbosacral spine which limits his work activities to light and sedentary work.

Considering the claimant's residual physical capacity and his vocational background, he is able to perform jobs which are present in significant numbers in the region in which he lives, e. g., he is able to perform such jobs as watchman, scale clerk, retail salesman in a hardware store, motel front office clerk, brazier, capping machine operator and automatic grinding machine operator.

The claimant was not prevented from engaging in any substantial gainful activity for any continuous period beginning on or before the date of this decision which has lasted or could be expected to last for at least 12 months.

Based on these conclusions, the administrative law judge determined that the claimant was not under a "disability," as defined in the Social Security Act, as amended, at any time prior to the date of the decision (August 22, 1974).[4]

As we have already noted, the Appeals Council considered additional medical reports but nevertheless sustained the decision of the administrative law judge on June 9, 1975. That decision of the Appeals Council became the final determination of the Secretary.

■ The record, as summarized in this opinion, contains substantial medical evidence indicating that notwithstanding Keller's medical disability, he is not permanently disabled and his physical condition does permit him to engage in light or sedentary activities. Thus, he cannot qualify for Social Security disability insurance benefits under the law, even though he has been unable to find gainful employment since December of 1972.

Affirmed.

---

**3.** These descriptions of light work and sedentary work were taken, according to Dr. Boyd, from the Department of Labor's definitions in its Dictionary of Occupational Titles.

**4.** "Disability" for the purposes of the Social Security Act is defined in 42 U.S.C. § 423(d)(1)(A), as

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

Section 423(d)(2) provides in relevant part:

(2) For purposes of paragraph (1)(A)—

(A) an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives * * *.