**Dwain E. ROBERTS, Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Appellee.**

No. 81–2227.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1982.

Decided July 8, 1982.

Robert J. Blackwell, Flat River, Mo., for appellant.

Thomas E. Dittmeier, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for appellee; Paul P. Cacioppo, Regional Attorney, Region VII, Dept. of Health and Human Services, D. Samuel Borin, Kansas City, Mo., on brief.

Before McMILLIAN, Circuit Judge, STEPHENSON, Senior Circuit Judge, and ARNOLD, Circuit Judge.

PER CURIAM.

Dwain E. Roberts was denied disability insurance benefits and supplemental security income benefits by the Secretary of Health and Human Services. On review, the district court[1] adopted the findings of the United States magistrate and granted the Secretary's motion for summary judgment. The district court concluded that substantial evidence supported the Secre-

tary's finding that Roberts was not disabled within the meaning of the Act. We affirm the district court.

Roberts filed his present application for benefits on October 12, 1979.[2] A hearing on his application was held on March 21, 1980. At the time of the hearing, Roberts was thirty-one years old, 5 feet 6½ inches tall, weighed 185 pounds and had an eighth grade education. Roberts had worked in the past as an aid in his mother's boarding house, a construction worker, a furniture mover and a filling station attendant.

Medical reports in the record indicate that Roberts does suffer from a back ailment. However, that fact alone does not support a finding that Roberts is disabled unless the limitations imposed by his back ailment prevent him from engaging in substantial gainful activity. *See Keller v. Matthews*, 543 F.2d 624 (8th Cir. 1976).

The medical evidence, summarized in chronological order, is as follows. A May 1974 report from the Riverview Hospital of Santa Anna, California, indicated that Roberts was placed in a body cast and given pain medication for a lower back problem. He was discharged from the hospital with a prognosis of fair.

Dr. D. W. Hammond examined Roberts in December 1978. His report states that Roberts "walks around the room stiffly, with a pained expression on his face." However, the x-rays of the lumbosacral spine showed no abnormalities. Dr. Hammond concluded that Roberts had chronic low back strain syndrome with substantial functional overlay.

In February of 1979, Roberts was examined by Dr. Trueblood for chronic low back pain. His report indicates that Roberts "moves around with a great show of discomfort." Dr. Trueblood further noted that after the examination as he watched

---

1. The Honorable James H. Meredith, United States District Judge for the Eastern District of Missouri.

2. Roberts had filed a prior claim for benefits because of a back ailment which was denied

after a hearing by an ALJ in an opinion dated April 18, 1979. No further action was taken on this prior application for benefits; therefore, that decision is final and binding and not subject to review. *See* 42 U.S.C. § 405(g) & (h).

Roberts walk down the street outside the office, Roberts "move[d] with considerably more fluid gait, swinging his pelvis with normal gait characteristics and normal pelvic rotation, a considerably different pattern than I witnessed in the examining room." Dr. Trueblood's impression was that Roberts had chronic low back strain with significant functional overlay and possible malingering.

A short, one paragraph report was written by Dr. T. J. Bentley of the Mineral Area Medical Center in March of 1979.[3] The report indicated that Dr. Bentley had given pain medication and injections in response to Roberts' complaints of back pain. No diagnosis was indicated and disability was not discussed. Later, in his June 1980 answers to interrogatories, Dr. Bentley stated that he had seen Roberts a total of five times since February of 1979,[4] and that he was unable to indicate any limitations on Roberts' movements because he had not done an extensive work-up on the patient.

In September of 1979, Roberts was admitted to Mineral Area Osteopathic Hospital for low back pain. Dr. Forsythe arranged for a transfer to Normandy Osteopathic Hospital for a lumbar myelogram. That test was performed at Normandy and it indicated a questionable area pressure defect at L5 on the left. The doctors next scheduled Roberts for a EMG and nerve conduction study but Roberts refused those tests and left Normandy Hospital.

Two Residual Functional Capacity Reports regarding Roberts are also included in the record. The doctor making the earlier report (November 1979) stated that in an eight-hour work day Roberts should be able to stand/walk for six hours and should be able to sit for eight hours. Also, he stated that Roberts should be able to carry ten pounds frequently. The later report, made in January of 1980, indicates the same lifting and sitting capacity but differs in that Roberts was judged to be able to stand/walk for six to eight hours in an eight-hour work day.

A rehabilitation counselor, William Durbin, testified at the hearing before the ALJ. He concluded that if Roberts' pain was intractable, Roberts would be unemployable. However, Durbin also stated that if Roberts' pain was not intractable and if Roberts could sit six to seven hours in an eight-hour work day, stand, handle objects and carry ten pounds, then Roberts would be able to do work of a light or sedentary nature. Durbin testified that, under such circumstances, Roberts would be employable as a service station attendant, a delivery driver, a light janitorial worker, or an electronic bench assembly worker or inspector.

Roberts also testified at the hearing before the ALJ. He stated that he had back pain, headaches and that his left leg gives out on him. He testified that he can stand for ten to fifteen minutes and that he cannot sit for more than twenty minutes in one position.

The above summary of the record reveals that there is some conflicting evidence in the record on the issue of whether Roberts can work despite a chronic back ailment. However, our review is limited to deciding whether the final administrative determination is supported by substantial evidence. *Barker v. Harris*, 650 F.2d 138, 139–40 (8th Cir. 1981). The ALJ ruled that Roberts was not disabled and that Roberts had the capacity to engage in the jobs listed by Durbin, the vocational expert. The two Residual Function Capacity Reports, as well as the statements made by Drs. Hammond, Trueblood and Bentley support this finding.

■ The ALJ is required to seriously consider Roberts' testimony of incapacitating pain even though it is not fully corroborated by objective examinations and tests. *See Brand v. Secretary of HEW*, 623 F.2d 523, 525–26 (8th Cir. 1980). *See also Ballowe v. Harris*, 650 F.2d 130, 132–33 (8th Cir. 1981). Here, the ALJ seriously considered Roberts' complaints of pain. He thereafter concluded that it was not "credi-

---

**3.** Roberts replied, "Dr. Bentley" in response to the ALJ's question: "What doctor do you see?"

**4.** Roberts testified that he had been seen by Dr. Bentley quite often since 1978.

ble that Mr. Roberts experiences such severe pain that would preclude him from engaging in work of light or sedentary nature." Our review of the record does not reveal any information which would cause us to reject this finding. Substantial evidence supports the administrative determination that Roberts was not disabled to the extent that he would be precluded from engaging in substantial gainful activity.[5]

Affirmed.

---

5. The ALJ specifically found that: "Considering his maximum work capability, age, education and work experience, based on Regulation 404.1513 and considering Rule 202.19, the Table No. 2 of Appendix 2, Subpart P [of Part 404], the claimant is found, 'not disabled'."