**Jerry V. CLARK, Appellant,**

v.

**Margaret V. HECKLER, Secretary of Health & Human Services, Appellee.**

No. 83–2501.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1984.

Decided April 27, 1984.

**66**

Stuart R. Berkowitz, Clayton, Mo., for appellant.

Thomas E. Dittmeier, U.S. Atty., Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for appellee; Paul P. Cacioppo, Regional Atty., Region VII, D. Samuel Borin, Atty., Dept. of Health and Human Services, Kansas City, Mo., of counsel.

Before McMILLIAN, Circuit Judge, FLOYD R. GIBSON and HENLEY, Senior Circuit Judges.

PER CURIAM.

The petitioner, Jerry V. Clark, seeks review of the termination of his social security benefits by the respondent, the Secretary of Health and Human Services. The petition was assigned to a United States Magistrate[1] who recommended that summary judgment be entered in favor of the Secretary. The district court[2] adopted this recommendation and entered summary judgment for the Secretary. We affirm in part and reverse and remand in part.

Originally, petitioner was granted disability benefits on April 15, 1974. Disability was premised upon a history of mitral valve replacement surgery secondary to rheumatic heart disease and congestive heart failure with recurrent arrhythmia.

---

1. The Honorable Robert D. Kingsland, United States Magistrate for the United States District Court, Eastern District of Missouri.

2. The Honorable J.H. Meredith, United States District Court for the Eastern District of Missouri.

Upon review, the Secretary determined that, as of June of 1981, the petitioner's condition no longer prevented him from engaging in substantial gainful activity. After a hearing on this decision, an Administrative Law Judge held that the petitioner was no longer disabled. The Appeals Council for the Social Security Administration denied petitioner's request for review.

The petitioner was born on October 4, 1942. He has completed three years of high school, acquired a G.E.D., and completed a 36-week vocational training course as a junior accountant. Prior to his surgery, plaintiff had worked as a store clerk, had sold life insurance and had packed fuses. He underwent mitral valve replacement surgery on February 17, 1972. Although the petitioner worked part-time after this surgery, severe chest pain and difficulty with breathing forced him to quit. Subsequently, the petitioner qualified for disability benefits. He claims that he still is disabled because of his heart condition.

There was a great deal of medical evidence, concerning the petitioner's residual functional capacity, before the ALJ. The petitioner was examined by a Dr. Wolff in 1981. This same doctor had examined the petitioner with respect to his first application for disability benefits. At that time, Dr. Wolff had determined that the petitioner's heart condition was severe enough to cause significant limitations of activity. In 1981, Dr. Wolff noted that the petitioner had made an excellent recovery from surgery. Dr. Wolff also concluded that, while the petitioner suffered from some functional impairment, he was no longer totally disabled. Dr. Wolff determined that the petitioner could be employed at light or sedentary work. Dr. Wolff's report revealed that the petitioner's only complaint was shortness of breath with exertion. The petitioner denied any significant chest pain.

A neurological and psychiatric examination was conducted by Dr. Bronson in 1981. At that time, the petitioner complained of nervousness, poor memory, and irritability. Dr. Bronson concluded that the petitioner could relate well to supervision, could understand and follow instructions, and could perform repetitive tasks. However, Dr. Bronson also noted that the petitioner would have problems handling criticism and stress due to his low frustration tolerance, irritability, and explosive temper.

The petitioner was also examined in 1981 by Dr. Gardner, his treating cardiologist. On the basis of this exam, Dr. Gardner recommended that the petitioner be considered totally disabled from the standpoint of gainful employment.

In 1982, the petitioner was examined by Dr. Jicks. Dr. Jicks noted that the petitioner's chief complaint was "heart trouble". He also complained of extreme fatigue, shortness of breath, episodes of transient blindness, light headedness, and frequent episodes of "anterior precordial distress." Nevertheless, Dr. Jicks concluded that the petitioner's physical impairment would let him sit for an eight-hour day, lift and carry up to ten pounds, and bend, reach, or squat occasionally.

At the hearing, the petitioner testified that he spends his days watching television, and that he bowls one night a week. A letter from petitioner's wife related that the petitioner's health has taken a toll on him mentally; he has shaking spells, has cried at times for no apparent reason, and has trouble with his memory.

The ALJ specifically found that, as of June 1981, there were no significant nonexertional restrictions on the petitioner's ability to perform sedentary work, and that the petitioner's complaints of totally disabling chest pain, during the same period of time, were not credible. The ALJ is in a better position to assess credibility issues than we are.

Taking into consideration the petitioner's age, education, work experience, and reduced functional abilities, the ALJ applied the Secretary's Medical-Vocational Guidelines. 20 C.F.R. Subpart P, App. 2 (1982). Rules 201.28 and 201.29 under those Guidelines directed the ALJ to find that the petitioner was not disabled.

■ In order to qualify initially for disability benefits, a claimant bears the burden of proving a personal inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last at least twelve months or result in death. However, once a claimant proves an inability to perform work previously performed, the burden shifts to the Secretary to establish that the claimant can perform some other type of gainful activity. *Bassinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984).

■ Our role on review is to determine whether the Secretary's decision is supported by substantial evidence on the entire record. 42 U.S.C. § 405(g) (Supp. V 1981); *Smith v. Schweiker*, 728 F.2d 1158, 1162 (8th Cir.1984); *McMillian v. Schweiker*, 697 F.2d 215, 221 (8th Cir.1983). Substantial evidence is "more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate support for a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *McMillian*, 697 F.2d at 220. The only question on review is whether the ALJ was correct in applying the Guidelines in determining that the petitioner was disabled, or whether the testimony of a vocational expert was necessary to satisfy the Secretary's burden of proof. This court has held that, if they apply, the Guidelines satisfy the Secretary's burden of establishing that a claimant is capable of performing substantial gainful activity despite the claimant's inability to perform previous jobs. *McDonald v. Schweiker*, 698 F.2d 361, 364 (8th Cir. 1983); *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982). The "grid" (Guidelines) must not be applied if the claimant's impairment is "nonexertional" *McDonald* at 364.

The petitioner claims that the ALJ was precluded from applying the Guidelines because the petitioner claimed he was suffering from pain and psychiatric problems, i.e., nonexertional impairments. We agree with part of this contention.

■ The ALJ found that the petitioner's complaints of totally disabling chest pain were not credible. It is well established that an ALJ may discredit a claimant's subjective complaints of pain. *Smith v. Schweiker*, 728 F.2d 1158, 1163 (8th Cir. 1984); *Simonson v. Schweiker*, 699 F.2d 426, 429 (8th Cir.1983); *Andrews v. Schweiker*, 680 F.2d 559, 561 (8th Cir.1982); *Fitzsimmons v. Mathews*, 647 F.2d 862, 864 (8th Cir.1981). However, the ALJ must do so specifically, *Andrews*, 680 F.2d at 561, and may do so only under limited circumstances. *See, e.g., Nelson v. Heckler*, 712 F.2d 346, 348 (8th Cir.1983) ("The Secretary must give consideration to subjective complaints of pain and may not disregard them solely because they are not fully corroborated by objective medical evidence .... In determining whether a claimant's complaints are credible, the Secretary must consider all available evidence, including the claimant's work history, corroborative testimony, the claimant's efforts to seek relief from pain and, of course, the objective medical evidence"). An ALJ may discredit a claimant's complaints of pain when there are inherent inconsistencies in the evidence, "so long as the disbelief is not based solely on the lack of objective medical findings". *Isom v. Schweiker*, 711 F.2d 88, 90 (8th Cir.1983).

■ According to the Magistrate's opinion, there was contradictory evidence regarding the petitioner's pain and there was no evidence to corroborate the petitioner's claim. During the examination by Dr. Wolff, the petitioner disclaimed any significant chest pain. At the hearing before the ALJ, the petitioner stated that he experiences chest pain regardless of whether he is at rest or engaging in activity. However, according to the Magistrate's opinion, the petitioner also testified that he takes nitroglycerin which relieves the pain. Apparently, this was the only evidence of pain which was presented. It was within the ALJ's province to reconcile this conflict in the evidence. *Janka v. Secretary of Health, Ed. & Welfare*, 589 F.2d 365, 369 (8th Cir.1978). We have no basis here to

disturb the finding which discredited the petitioner's subjective complaints of pain.

 However, we cannot reach the same conclusion regarding the petitioner's claim of psychiatric problems. This court has held repeatedly that where a claimant suffers from a nonexertional impairment the Guidelines are not applicable. *Nelson*, 712 F.2d at 348; *Simonson*, 699 F.2d at 430; *McDonald*, 698 F.2d at 364–65; *Tucker v. Schweiker*, 689 F.2d 777, 780 (8th Cir.1982); *McCoy*, 683 F.2d at 1148; *see* Heaney, *Why the High Rate of Reversals in Social Security Disability Cases*, 7 Hamline L.Rev. 1, 13–14 (1984). Rather, the Secretary is obligated to produce vocational expert testimony concerning whether there are jobs available which a person with the claimant's particular characteristics can perform. *Nelson*, 712 F.2d at 348.

 The doctor who conducted the psychiatric exam concluded that the petitioner could relate well to supervision, could understand and follow instructions, and could perform simple, repetitive tasks. However, the doctor also noted that the petitioner would have difficulty handling stress and criticism due to his low frustration tolerance, irritability, and explosive temper. Previously, we have noted that:

> The [residual functional capacity] that must be found if the [Guidelines are] to be used, in the case of sedentary and medium work, as well as light work, is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.

*McCoy*, 683 F.2d at 1147. Further, it is clear that a psychiatric impairment is a nonexertional impairment. *Tucker*, 689 F.2d at 780; *McCoy*, 683 F.2d at 1148; *see McDonald*, 698 F.2d at 365.

 The Secretary argues that the petitioner's psychiatric problems are not a significant enough impairment to preclude the use of the Guidelines. We admit that the petitioner's psychiatric problems may not be significant in and of themselves. Nevertheless, our precedent mandates that the existence of a nonexertional impairment precludes the use of the Guidelines; and a consideration of the petitioner's psychiatric problems *in combination* with his heart problems very well may lead to the conclusion that he is not capable of performing substantial gainful activity, which is why the testimony of a vocational expert is necessary.

Accordingly, we affirm in part and reverse and remand in part. We affirm the ALJ's findings that the petitioner's complaints of disabling chest pain were not credible. We also reverse and remand with instructions to the Secretary to produce a vocational expert who can testify as to whether, given his exertional and nonexertional impairments, the petitioner is capable of substantial gainful activity.

Reversed and remanded for further proceedings costs assessed against the Appellee.