**Willie A. JOHNSON, Plaintiff-Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 83–2436.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided Sept. 26, 1984.

J. Paul McGrath, Asst. Atty. Gen., George W. Proctor, U.S. Atty., E.D.Ark., Chalk S. Mitchell, Asst. U.S. Atty., Little Rock, Ark., for defendant-appellee.

Alan J. Nussbaum, P.A., Little Rock, Ark., for plaintiff-appellant.

Before BRIGHT, Circuit Judge; FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The claimant, Willie Johnson, appeals from the district court's grant of summary judgment in favor of the Secretary of Health and Human Services on a decision to terminate the claimant's disability benefits. Under the standards set forth in *Rush v. Secretary of Health & Human Servs.*, 738 F.2d 909 (8th Cir.1984), we affirm.

## I. Facts

The claimant suffered an injury in 1974. While at work in a slaughterhouse he severely injured his back. He applied for disability benefits on December 13, 1977, and on October 28, 1978, an administrative law judge (ALJ) issued a decision which granted the claimant disability benefits. In February of 1980 the Secretary began a re-investigation of the claimant's disability and, in August of 1980, determined that he was no longer disabled. The claimant requested an evidentiary hearing which was conducted in April of 1981. On July 17, 1981, the ALJ issued a decision in which he determined that the claimant was no longer disabled. The Secretary's Appeals Council denied the claimant's request for a review of that determination. The claimant then filed the present action in federal district court,[1] and now appeals from that court's grant of summary judgment in favor of the Secretary.

At the time of the termination hearing the claimant was thirty-three years old and functionally illiterate. At the hearing the claimant testified that he has not been able to work since 1974, and also testified as to his daily activities after he was injured. Because of pain, he had trouble getting to sleep before 2:00 A.M. He usually got out of bed between 9:00—10:00 A.M. On some days he would take a "hot sitz bath" if he woke up feeling stiff; on other days he would take pain medication. The claimant testified that he took medication intermittently, however, because he did not always have the money to buy it. On a normal day, the claimant would walk about six miles for exercise and watch television. The claimant received physical therapy but, again, only intermittently for want of money. He testified that his pain gets progressively worse as the day goes on. Thus, he could drive in the mornings but not in the evenings. While he could undertake almost any activity for an hour or two, he could not stay at it any longer than this because the pain would get too bad. For the same reason, he could not sit any longer than an hour or two at a time, and would have to lie down instead. The claimant testified that he also suffers from arthritis and high blood pressure.

While the intensity of the pain the claimant experienced stayed relatively constant between 1974 and 1977, he began to feel better between 1977 and 1980. In April of 1980, however, he reinjured his back by lifting and carrying two of his children away from danger. To the claimant, this second injury was worse than the first. The claimant's treating physician pre-

---

1. The Honorable G. Thomas Eisele, United States District Court for the Eastern District of Arkansas.

scribed physical therapy and pain medication for this second injury.

Offered into evidence at the hearing were reports from four physicians. Dr. McKenzie, an orthopedic surgeon, examined the claimant both in 1974 and 1980. In 1974, the claimant's treating physician had suspected that the claimant's pain was caused by a "herniation disc disease process." McKenzie noted that if indeed the claimant was suffering from this process, physical changes due to the progression of the disease, not apparent on x-rays taken in 1974, should appear on the x-rays taken in 1980. McKenzie was unable to detect any change from the x-rays. McKenzie gave the claimant "leg-raising tests" which apparently measure a patient's freedom of movement. He administered two different tests which measured the same physical phenomenon. During one test the claimant complained of pain after a limited degree of movement; during the other the claimant had considerably greater freedom of movement without pain. McKenzie noted the inconsistency between these tests and remarked that, as between the two, the test during which the claimant did not experience pain was the more valid. McKenzie concluded that the claimant was not restricted in activities from an orthopedic standpoint. We note that this examination was made before the claimant suffered the second injury to his back.

The claimant was seen also by Dr. Kassem, a family practitioner, but this examination was made after the claimant's second injury. Kassem's report, in pertinent part, is as follows: "BACK: No tenderness on the spine. He does have restriction of flexion[2] of the spine but full range of motion and extension. The restriction of flexion is only minimal."

The record contains three reports from Dr. Lester, an orthopedic surgeon and the claimant's treating physician. In a 1979 report, Lester noted that the claimant was feeling better. Examination of the claim-ant's back revealed that he was feeling pain at the lumbosacral level which was "accentuated by extension." However, Lester noted that the claimant had a normal range of motion without evidence of muscle spasm or underlying nerve irritation. In a 1980 report, Lester noted that he treated the claimant for the second back injury. At the time of the injury the claimant immediately sought treatment. Lester, at that time, diagnosed the claimant as having an "acute lumbosacral" strain which was treated with pain medication and, eventually, physical therapy. In May of the same year, the claimant complained of continued low-back pain. Straight leg-raising tests performed at this time were positive for both legs and more pronounced on the left, while immediately after the accident the tests had been positive for the left leg and negative for the right. In a letter written to the claimant's attorney in 1981, Lester noted that he had seen the claimant in September, October, and December of 1980 for continued back pain and neck stiffness. Lester prescribed pain medication and physical therapy on these occasions for what he had consistently diagnosed as a "musculoligamentous" injury.

Finally, the claimant was examined by Dr. Levy, a neurologist. Levy made this examination after the termination hearing, at the ALJ's behest. In his report, Levy noted as follows:

> Gait was normal. In straight leg raising, two different tests were used. In the standard test, the patient can only go 30 degrees on the right side and 40 degrees on the left. He was familiar with this test. When an alternate test was used testing the same nerve pathways, he was able to go 90 degrees on both sides. He did report some pain in his lower back when he was at 90 degrees.

In all other range of motion tests Levy reported that the claimant had normal movement. Levy diagnosed the claimant as having arthritis and back strain. He

---

**2.** "Flexion" is the "act of bending or condition of being bent." *Dorland's Medical Dictionary,* 598 (25th ed 1974).

concluded that the claimant was capable of light or sedentary work, although some of the options normally available within this range of work would be foreclosed because of the claimant's illiteracy. In assessing the claimant's residual functional capacity, Levy concluded that the claimant could stand two hours and sit three hours at a time during the course of an eight-hour day, walk two miles, lift and carry up to twenty pounds, push and pull up to twenty-five pounds, and that he should avoid bending or stooping.

Relying on the medical vocational guidelines, the ALJ concluded that the claimant retained the "residual functional capacity for at least sedentary work" and thus no longer was entitled to disability benefits. In reaching this conclusion, the ALJ explicitly discredited the claimant's subjective complaints of pain.

## II. Discussion

In *Rush v. Secretary of Health & Human Servs.*, 738 F.2d 909 at 915–916 (8th Cir.1984), this court established the standards which are to govern in termination of disability cases.

We * * * hold that, in a disability-termination proceeding, there is a presumption that a claimant who has previously been determined to be disabled remains disabled. We also hold * * * that the initial burden is on the Secretary to come forward with evidence which indicates that there is a legitimate reason to re-evaluate the claimant's right to receive benefits and which, if believed, would justify termination. The Secretary may meet this burden by showing that there was clear and specific error in the prior determination or by producing new evidence that the claimant's medical condition has improved, that the claimant has benefitted from medical or vocational therapy or technology, or that the claimant's condition is not so disabling as originally supposed.

The Secretary has not, in this case, proved that the prior determination of claimant's disability was erroneous. Thus, we accept

as given the claimant's previous disability. However, we believe that the Secretary had evidence which indicated that there was a legitimate reason to re-evaluate the claimant's right to receive benefits, and we think that the Secretary has produced evidence that the claimant's condition has improved.

■ Three physicians examined the claimant specifically for purposes of redetermination. This was not a case where the Secretary merely submitted the evidence used to support the first determination to a different set of doctors, in hopes of getting a different appraisal. Each of the Secretary's physicians who examined the claimant concluded that he had a normal range of movement free from pain. We think this evidence was sufficient to rebut the presumption that the claimant still was disabled.

■ Once the Secretary rebuts the presumption, the termination hearing proceeds in the same manner as an initial disability hearing; the burden of persuasion, i.e., of proving disability, is on the claimant. *Rush*, slip op. at 916. Accordingly, our role on review is to determine whether there is substantial evidence on the record, as a whole, to support the Secretary's decision. *Parsons v. Heckler*, 739 F.2d 1334 at 1339 (8th Cir.1984); *Smith v. Schweiker*, 735 F.2d 312, 315 (8th Cir.1984); *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir.1984). Substantial evidence is "more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Clark*, 733 F.2d at 68, *quoting, Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ In this case, the ALJ attempted to satisfy the Secretary's burden by applying the medical vocational guidelines. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.23 (1983). For an individual who is under the age of forty-four, illiterate, and unskilled, the guidelines direct a determination of not disabled. *Id.* However, it is well established that the guidelines may be relied on only where a claimant suffers from an exertional impairment. When a

claimant suffers from both exertional and nonexertional impairments, or from a nonexertional impairment alone, the grid does not apply and it is improper to use it for a disability determination under these circumstances. *Parsons,* slip op. at 1339; *Southworth v. Heckler,* 738 F.2d 445 slip op. at 4 (8th Cir.1984); *see Clark,* 733 F.2d at 68; *McCoy v. Schweiker,* 683 F.2d 1138, 1148 (8th Cir.1982); *see* Heaney, *Why the High Rate of Reversals in Social Security Disability Cases,* 7 Hamline L.Rev. 1, 13–14 (1984).

■ Pain may be a nonexertional impairment. *McCoy,* 683 F.2d at 1148. In this case the claimant's testimony consisted almost exclusively of the pain he experienced on a continuous basis. Thus, the ALJ's application of the guidelines was legitimate only if the ALJ explicitly discredited the claimant's subjective allegations of pain for a legally sufficient reason. *Southworth,* slip op. at 4; *Clark,* 733 F.2d at 68. One of the legally sufficient reasons for discrediting subjective allegations of pain is the presence of inconsistent evidence in the record. *Pryor v. Heckler,* 737 F.2d 1488 at 1490 (8th Cir.1984); *Smith,* at 735 F.2d at 318–19; *Clark,* 733 F.2d at 69.

■ In his decision, the ALJ noted that there was inconsistent evidence in the record. Two physicians, on different occasions, each gave the claimant a "straight leg-raising" test during which he reported pain and restriction of movement. The same two physicians also gave the claimant another test which, according to their reports, measured the same physical phenomenon as the first test. However, during this latter test the physicians reported that the claimant had almost complete freedom of movement without pain. Although the ALJ failed to rely explicitly on this evidence in discrediting the claimant's subjective allegations of pain, it was noted in the decision and we cannot overlook it. In this case the ALJ ordered an additional examination by Dr. Levy after the hearing, which indicates ample consideration by the ALJ of the claimant's subjective complaints of pain and the contradictory medical evidence

on this issue. We are not free to overturn a credibility determination which is supported by substantial evidence in the record. *See Clark,* 733 F.2d at 68; *Roberts v. Schweiker,* 682 F.2d 743, 744–45 (8th Cir.1982); *Russell v. Secretary of HEW,* 540 F.2d 353, 357 (8th Cir.1976).

■ Thus, the ALJ properly relied on the medical vocational guidelines in determining that the claimant no longer was disabled. Accordingly, we affirm the district court's grant of summary judgment in favor of the Secretary.