**Danny M. WILLIAMS, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of the Department of Health and Human Services, Defendant.**

No. CV89–L–367.

United States District Court,
D. Nebraska.

June 20, 1990.

Jerry Soucie, West Chester, Pa., for plaintiff.

Daniel A. Morris, Asst. U.S. Atty., Omaha, Neb., for defendant.

MEMORANDUM OF DECISION

URBOM, District Judge.

On July 15, 1985, the plaintiff, Danny M. Williams sustained a severe head injury in a motorcycle accident. His wife, Donna Williams, made application for disability benefits on July 28, 1985. (Tr. p. 39–42). In a letter dated August 26, 1985, Dr. Benjamin R. Gelber reported that Williams should be considered completely disabled and unable to manage his own affairs. The length of his disability was indeterminate, but was expected to last at least one year and probably longer. (Tr. p. 165). Disability benefits were awarded on September 4, 1985. Approximately one year later the named payee was changed (to Williams' mother) because a divorce action had been filed. (Tr. p. 43–47).

Benefits were discontinued as of March 1988, based on the hearing officer's determination that Williams was no longer disabled. (Tr. p. 75–87). Williams requested a hearing before an administrative law judge (ALJ), which was held on November 16, 1988. On January 4, 1989, the ALJ found that Williams' entitlement to disability and to disability insurance benefits under 216(i) and 223(a) of the Social Security Act, as amended, had ended. This decision was based on the finding that Williams' disability had ceased in January 1988, when he first demonstrated his ability to engage in substantial gainful activity. (Tr. p. 8–12). The Appeals Council of the Social Security Administration denied Williams' request for review, (Tr. p. 4–5), thus the

decision of the ALJ stands as the final decision of the Secretary.

## DISCUSSION

The standard of review for termination of disability benefits is found in 42 U.S.C. § 423(f), which provides in applicable part that:

A recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by—

(1) substantial evidence which demonstrates that—

(A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and

(B)(i) the individual is now able to engage in substantial gainful activity[.]

There is substantial evidence that Williams' medical status has improved since the time of the initial disability determination. At the time the disability benefits were awarded, Williams was comatose and recovering from a closed head injury. (Tr. p. 79, 82). After spending a month in the hospital, Williams was transferred to the Madonna Professional Care Center in Lincoln, where he remained until his release in December 1986. (Tr. p. 79, 199).

On October 1, 1987, Williams was examined by Dr. R.C. Sposato, a Lincoln neurologist. Dr. Sposato reported that Williams was alert, oriented, fluent and was able to be understood. He scored 29 points out of a possible 30 on a cognitive capacity screening examination. (Tr. p. 177).

An examination was also performed on November 12, 1987, by Dr. William R. Stone, Jr., a clinic psychologist. Dr. Stone reported that Williams was oriented for time, place and person. His speech was relevant and coherent, and he was able to carry on a rational goal-directed conversation. Williams indicated having difficulties with remembering a sequence of tasks and presented a notebook he used for that purpose. Later in the interview he was able to recall earlier portions of the interview in a general way but had difficulty going into great detail. His cognitive functioning was estimated to be in the low average range. Williams indicated that he lived by himself, was able to take care of his own household tasks (including cooking and housekeeping), that he had no difficulties with sleep or appetite, and that he enjoyed building models and reading horror books. (Tr. p. 179). He arrived unaccompanied for the examination. (Tr. p. 178). Dr. Stone stated that in view of Williams mild memory impairment, a probable mild decrement in cognitive functioning, and changes in his personality, a diagnosis of organic mental syndrome was appropriate. (Tr. p. 181).

The next question is whether the ALJ's finding that Williams is able to engage in substantial gainful activity is supported in the record by substantial evidence. I find that it is.

20 C.F.R. § 404.1572(a) and (b) provide that:

Substantial gainful activity is work activity that is both substantial and gainful:

(a) *Substantial work activity.* Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility that when you worked before.

(b) *Gainful work activity.* Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

The record shows that Williams became employed at Goodwill Industries in October 1987 at a pay rate of $3.35 per hour. He worked four hours per day for a total of 20

hours per week. (Tr. p. 29). His job involved janitorial tasks at the Federal Building, which consisted mostly of mopping, sweeping, dusting and taking out the trash. (Tr. p. 28, 201, 215). He was unable to run the buffing machine because he had problems with his balance. (Tr. p. 28). Goodwill provided him with a blackboard that listed his daily assignments. Williams checked off each task on the blackboard as he completed it. He also carried his notebook with him. Goodwill Industries felt his strength was sufficient but that the main problem was his balance and memory. (Tr. p. 201). His average monthly earnings from January 1988 to October 1988 was $369.00. (Tr. p. 212).

The regulations at 20 C.F.R. § 404.1574(b) provide that:

(2) *Earnings that will ordinarily show that you have engaged in substantial gainful activity.* We will consider that your earnings from your work activities as an employee show that you have engaged in substantial gainful activity if—

. . .

(vi) Your earnings averaged more than $300 a month in calendar years after 1979.

. . .

(4) *If you work in a sheltered workshop.* If you are working in a sheltered workshop or a comparable facility especially set up for severely impaired persons, your earnings and activities will ordinarily establish that you have not done substantial gainful activity if— . . .

(vi) Your average earnings are not greater than $300 a month in calendar years after 1979.

Because the evidence shows, and Williams does not dispute, that he was earning in excess of $300 per month during the period in issue, substantial evidence supports the Secretary's decision that the plaintiff was engaging in substantial gainful activity.

Williams testified at the November 16, 1988, hearing that he was unable to work more than four hours per day because he became unstable on his feet after that period of time. He described himself as tipping over or falling over, and that his feet get "confused". (Tr. p. 29). The problem was mainly with his right leg, and a leg brace had been ordered. (Tr. p. 30).

The ALJ found that Williams' testimony that he could not work more than 20 hours per week was not credible. (Tr. p. 11). A review of the record shows substantial evidence that Williams did in fact have difficulties with his right leg. However, the record does not contain evidence that these difficulties translated into an inability to work for more than 20 hours per week. Williams employment at Goodwill was limited to 20 hours per week because Goodwill was unable to provide him with any more hours. (Tr. p. 204). There is no evidence that he was limited to 20 hours per week because of any medical condition.

Michael McKeeman, a medical vocational rehabilitation specialist, interviewed Williams on August 15, 1988. At that time Williams was earning $4.40 per hour at Goodwill Industries and was working 20 hours per week. Williams had difficulty moving about his apartment and it was clear that he could fall down occasionally. It was necessary for him to walk on tiptoes on one leg, which set him off balance during his stride. McKeeman's conclusion was that Williams' ability to hold a permanent job would be limited by the availability of routine repetitive tasks, a supportive environment that would provide repeated demonstrations and verbal instruction. Williams should not be placed in a situation where deductive reasoning, organization or novel planning is needed on a day-to-day basis. Williams possesses the ability to learn novel tasks over time as long as the proper environment is provided. He is able to identify errors but only after the action has been performed. Costly, imprudent or dangerous errors must be prevented by someone else. He can learn inductive reasoning or rote learning. (Tr. p. 203). McKeeman visited with Harriet Glover, the case manager, and Ron Spies, Williams' immediate supervisor at Goodwill. They said Williams was working at 77% of a full-work capacity and they believed he was competitively employable in addition to

Goodwill. Vocation rehabilitation had closed their file on Williams as rehabilitated. (Tr. p. 200).

When reviewing agency decisions concerning disability benefits, questions of fact, including the credibility of a claimant's subjective testimony, are primarily for the Secretary to decide, not the courts. To engage in fact-finding in a Social Security case is not within the province of a federal court. *Benskin v. Bowen,* 830 F.2d 878, 882–83 (8th Cir.1987). The Secretary's decision must be affirmed if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Clark v. Heckler,* 733 F.2d 65 (1984). "Substantial evidence is 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" *Metcalf v. Heckler,* 800 F.2d 793, 794 (8th Cir.1986), *quoting Consolo v. Federal Maritime Commission,* 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate support for a conclusion." *Clark v. Heckler,* 733 F.2d at 68.

I find that the decision of the ALJ is supported by substantial evidence.

### JUDGMENT

IT IS THEREFORE ORDERED that the decision of the Secretary is affirmed.