**Judith A. WAUDBY, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 88–5028–CV–SW–1.**

United States District Court,
W.D. Missouri,
Southwestern Division.

March 20, 1989.

Nicholas Swischer, Nevada, Mo., for plaintiff.

Judith Strong, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

WHIPPLE, District Judge.

This case is before the court on plaintiff's and defendant's respective cross-motions for summary judgment. Plaintiff appeals denial of her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and her application for supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.*

Plaintiff's applications were denied initially and on reconsideration (Tr. 53–57, 60–71). On September 30, 1987, an Administrative Law Judge (ALJ) entered his decision in which he found that plaintiff was not under a "disability" as defined in the Social Security Act (Tr. 6–15). On January 13, 1988, the Appeals Council of the Social Security Administration denied plaintiff's request for review (Tr. 3–4). Thus, the decision of the ALJ stands as the final decision of the Secretary. Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of a "final decision" of the Secretary of Health and Human Services under Title II. Section 1631(c)(3) of the Act, 42 U.S.C. § 1383(c)(3) provides for judicial review of a denial of SSI benefits to the same extent as the Secretary's final determination under § 205. The issue before the Court is whether the final decision of the Secretary, as expressed in the ALJ's decision dated September 30, 1987 is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g). For the reasons expressed herein, the decision of the Secretary denying plaintiff's application for disability insurance benefits under Title II and denying plaintiff's application for supplemental security benefits under Title XVI is affirmed.

### Statement of Facts

Plaintiff filed her applications on July 10, 1986, alleging disability beginning November 15, 1985, due to arthritis in her back and shoulder. Plaintiff was born on September 25, 1939 and was 46 years old on her alleged onset date (Tr. 49–52).

At the hearing held on August 5, 1987, plaintiff testified that she was 5′ 3″ tall and weighed 165 to 170 pounds. She had an eleventh grade education and formerly worked as a nurse's aide, truck driver, waitress, private nurse and housekeeper. Her last job ended in March 1986 allegedly because of her physical inability to continue. Plaintiff claims that she suffers pain in her back and legs, which began in 1966 following a stock-car accident. Plaintiff describes her back pain as constant and nagging. Plaintiff stated that the pain radiates to her hips and legs. Plaintiff claims that her back and legs get numb if she sits too long and this requires her to lie down two or three times daily for 45 minutes to one hour at a time. Plaintiff's medications reportedly include acetaminophen and Rufen for pain. Plaintiff also takes Mylanta for a bleeding ulcer. Plaintiff testified that she has ulcer problems and has a lot of pain from a recent gallbladder problem which resulted in surgery.

Plaintiff testified that her daily activities were limited to watching television and some crocheting and stated that she could not do any strenuous housework. Plaintiff testified that she believed that she could walk less than one block, stand 15 to 20 minutes, sit about 15 minutes and climb one flight of stairs. Plaintiff testified that walking causes sharp pain and that she has trouble getting out of a chair and in mov-

ing around. Plaintiff testified that her pain, even with the medication, affects her ability to think, read, and carry on conversations. Robert Boyer, plaintiff's fiancee, testified that he had observed her in pain and that the medication makes her drowsy. Further, he testified that plaintiff was unable to get out of a chair and occasionally dragged one foot when she walked.

### Medical Evidence

On June 12, 1986, plaintiff was treated in the Emergency Room of the Nevada City Hospital for complaints of generalized discomfort, buzzing in her ears, headache and vomiting. She was released the same day with a diagnosis of "flu syndrome" and with instructions to take Darvon for her headache.

On July 8, 1986, plaintiff saw F.L. Thompson, M.D., complaining of arthritis for six years in duration in her left shoulder and back. Plaintiff did not tell the doctor that she intended to use his examination for disability purposes and he did not perform a complete evaluation, but instead merely prescribed medication in an attempt to relieve symptoms. He did, however, report that given her history of back and shoulder injury plaintiff could experience "some discomfort at times." Dr. Thompson expressed some suspicion about plaintiff's motives because she saw him once previously, claiming a medical problem and then wanted him to fill out a disability evaluation form for her. Dr. Thompson concluded that plaintiff should have further evaluation, but he "[had] the feeling that she may not be as disabled as she feels that she is." (Tr. 112–13)[1]

On August 15, 1986, Charles J. Ash, M.D., an orthopedic surgeon, examined plaintiff at the request of the Social Security Administration. He noted that plaintiff was "a difficult historian," giving conflicting reports regarding the onset of her back problems, the frequency of reported migraine headaches, and her use of alcohol. He observed that plaintiff was moderately obese, but that she stood erect and moved about satisfactorily without limp or list. Plaintiff could heel and toe walk, and he observed her getting on and off the examining table and arising from the chair without difficulty (Tr. 114).

On examination, Dr. Ash noted tenderness in plaintiff's cervical and thoracolumbar spine. Range of motion was essentially unrestricted except in her cervical spine and left shoulder. Lumbar flexion was decreased, but extension, right and left, lateral bending, and right and left rotation were unrestricted. Straight leg raising was positive bilaterally. X-rays of her spine revealed marked spurring in addition to disc space irregularities and narrowing in the lumbar region. Shoulder x-rays showed "slight cystic changes in the humeral head and slight spurring of the inferior margin of the head of the humerus" as well as "mild narrowing of the AC joint." Diagnoses included "probable severe and chronic psychophysiological muscloskeletal reaction" and persistent migraines (Tr. 115).

On September 29, 1986 plaintiff was admitted to the Nevada City Hospital by L.M. Magruder, M.D., with complaints of abdominal pain and vomiting blood. Tests revealed both gallbladder disease and acute acid-peptic disease. By October 6, 1986, when William A. Turner, M.D., performed a consultative evaluation, plaintiff appeared well-developed, well-nourished and in no acute distress. He found full range of motion in all extremities and recommended that plaintiff undergo surgery for her gallbladder disease. Dr. Magruder discharged plaintiff on October 7, 1986 with instructions to remain on a 1000 calorie, low-fat bland diet and to take Duricef, Zantac, and Mylanta (Tr. 130).

On October 20, 1986, plaintiff reported to Dr. Magruder that she suffered from generalized joint pain of several months in duration. Plaintiff alleged that the pain was worse in her left knee, left hip and low back. On examination, Dr. Magruder

---

1. Additionally, Dr. Thompson found it interesting that acetaminophen, which plaintiff obtained by prescription, reportedly eased her pain, but that Tylenol, which was the same medication in the same strength, did not work at all.

found good range of motion in all joints, including her back, but "maybe a trace of joint effusion in the right knee." There was no neurological deficit, motor loss, sensory loss, reflex loss, or muscle weakness. He prescribed Motrin, 800 mgs., one tablet three times daily (Tr. 132). In a letter dated December 5, 1986, which accompanied the above report, Dr. Magruder stated that it was obvious that plaintiff was not disabled (Tr. 134).

Plaintiff continued to suffer with gallbladder related pain and was admitted by Dr. Turner to the hospital on February 5, 1987 for a cholecystectomy. On admission, plaintiff had full range in all extremities. Dr. Magruder agreed that surgery was indicated and a cholecystectomy was performed on February 6, 1987. Plaintiff recovered well and was walking by the time she was dismissed on February 12, 1987.[2] On August 16, 1987, records from the Nevada City Hospital reveal that plaintiff reported arthritis pain and she received a prescription of Rufen or Motrin because Ibuprofen had relieved her discomfort previously (Tr. 158). However, at this time plaintiff exhibited negative straight leg raising.

On September 9, 1987, plaintiff underwent a consultative examination by Ernst V. Szabados, M.D. His examination revealed full range of neck motion and good range of shoulder motion, but markedly limited trunk movement. He indicated that plaintiff could not lie supine with her lower limbs in full extension because of back pain, and that flexing her thighs and her abdomen caused pain. Straight leg raising was reportedly positively at 85°. Pulling on plaintiff's outstretched arms caused pain and the doctor indicated that she sat more comfortably with her knees extended because this provided more room for her "huge abdomen." (Tr. 191)[3] It appears that every movement the doctor requested elicited a pain response from the plaintiff.

Dr. Szabados also noted weak hand grips, puffy fingers without signs of arthritic stigmata and some absent reflexes, but he found no protective muscle spasm. Dr. Szabados also reviewed previous x-rays and determined that plaintiff suffered "extensive spondylitis, entire lumbar spine" and "effacement of the lumbar lordosis with the previously described degenerative changes and iatrogenic changers [sic] following two surgical interventions." He further found "evidence of extensive degenerative arthrosis with erosion of the Luschka joints of plaintiff's cervical spine, as well as evidence of degenerative process in plaintiff's knees." Dr. Szabados reported:

As a result of the history, clinical and x-ray examinations, it is my opinion the above-named individual is totally disabled (physically impaired)—unable to pursue any gainful functions, now or ever, by virtue of a chronic back syndrome stemming from a back injury in 1966[ ].

. . . . .

In addition, she has a chronic cervical syndrome manifested by pain/stiffness of the neck associated with Occipital headache coroborated [sic] by objective x-ray evidence[ ] (Tr. 188–93).

### Discussion

In order to establish entitlement to disability and supplemental security income (SSI) benefits, plaintiff must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable impairment expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The ALJ found that plaintiff had the "residuals of low back surgery, cystic changes and spurring of the head of the humerus on the left resulting in moderate limitation of mo-

---

**2.** During the cholecystectomy, it was revealed that there was a presence of "ascending cholangitis and moderate fatty metamorphose of plaintiff's liver" (Tr. 168–70). Cholangitis is defined as an inflammation of a bile duct. *Dorland's Medical Dictionary,* 26th Edition at page 259.

**3.** At this time Dr. Szabados reported that plaintiff was 5′ 4″ tall, weighed 200 lbs. and "Has been obese the past 5–6 years putting on much excess weight." (Tr. 188, 190)

tion of the left shoulder[ ]" (Tr. 14). He believed that her testimony was *not credible,* but determined that her impairments would, nevertheless, prevent her from performing her former work as a nurse's aide. The ALJ found that plaintiff had the residual functional capacity to perform the full range of sedentary work. Considering her age, education and residual functional capacity, the ALJ applied Rule 201.18 of 20 C.F.R. part 404, subpart P, Appendix II, Table I, which directed a finding of "not disabled" (Tr. 14).

Plaintiff argues that the ALJ erred by applying the Medical–Vocational Guidelines, arguing that because she testified she had pain, vocational expert testimony was required. It is true that if the claimant's non-exertional impairment interferes with his or her ability to perform the full range of work at the given exertional level, vocational testimony is necessary. *Thompson v. Bowen,* 850 F.2d 346, 350 (8th Cir. 1988). If, however, the ALJ discredits the claimant's allegations for a legally sufficient reason and determines that a potential non-exertional limitation, such as pain, does not significantly compromise the claimant's ability to perform the full range of work designated, the Guidelines may be applied. *Walker v. Bowen,* 834 F.2d 635, 642 (7th Cir.1987) (Guidelines applied when claimant alleged back pain); *Frustaglia v. Secretary HHS,* 829 F.2d 192, 193 (1st Cir. 1987) (Guidelines applied with claimant alleged chest pain); *Tucker v. Heckler,* 776 F.2d 793, 796 (8th Cir.1985) (Guidelines applied when claimant alleged chest pain, back pain and a mental impairment); *Nelson v. Secretary of HHS,* 770 F.2d 682, 685 (7th Cir.1985) (Guidelines applied when claimant alleged pain throughout her body, but leg and back pain in particular).

■ Here, the ALJ acknowledged that plaintiff suffered some pain related to her back and shoulder conditions. However, the mere existence of pain does not establish a disability. For pain to be disabling, it must be of such severity and duration that it precludes all substantial gainful activity. *Andrews v. Schweiker,* 680 F.2d 559, 560 (8th Cir.1982); *see also, Hollis v. Bowen,*

837 F.2d 1378, 1384 (5th Cir.1988); *Barajas v. Heckler,* 738 F.2d 641, 644 (5th Cir.1984).

In this case, the ALJ concluded that plaintiff could perform the full range of sedentary work and this determination is based on the ALJ's decision that plaintiff's testimony regarding *the severity* of her pain was not credible. In disability determinations, credibility assessments are in the first instance for the ALJ. *Smith v. Heckler,* 760 F.2d 184, 187 (8th Cir.1985); *O'Leary v. Schweiker,* 710 F.2d 1334, 1342 (8th Cir.1983). Provided an explicit credibility finding is made, it is within the province of the ALJ to determine whether to believe the claimant's subjective complaints. *Taylor v. Bowen,* 805 F.2d 329, 331 (8th Cir.1986); *Hardin v. Heckler,* 795 F.2d 674, 676 (8th Cir.1986). If there are inconsistencies in the record as a whole, the ALJ may disbelieve subjective testimony of pain. *Conley v. Bowen,* 781 F.2d 143, 147 (8th Cir.1986); *Smith, supra,* 760 F.2d at 187; *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.1984); *Beeler v. Bowen,* 833 F.2d 124, 127 (8th Cir.1987).

The record is replete with inconsistencies which reflect adversely on plaintiff's credibility. Plaintiff submitted medical records from 1983 showing that she complained of arthritis pain. Plaintiff's next request for medical treatment did not occur until June of 1986 when she complained of symptoms which were ultimately diagnosed as "flu syndrome," not arthritis pain. Likewise, plaintiff's alleged onset date of disability is November 15, 1985, but she did not report arthritis pain until July 8, 1986, more than two weeks *after* she filed her applications and almost eight months *after* her disability reportedly began.

Concerning medication, Dr. Thompson indicated he gave plaintiff a prescription on July 8, 1986 to relieve her symptoms (Tr. 113), but despite reportedly disabling pain, plaintiff took no medication on September 29, 1986 (Tr. 127). Evidence that a claimant has sought minimal medical treatment weighs against a finding of disability. *Edwards v. Secretary of HHS,* 809 F.2d 506, 508 (8th Cir.1987); *Driggins v. Bowen,* 791

F.2d 121, 124 (8th Cir.1986); *Weber v. Harris,* 640 F.2d 176, 178 (8th Cir.1981).

Despite complaints of disabling pain, plaintiff does not appear to have a treating physician for her musclo-skeletal discomfort. Also, there are significant discrepancies between the observations and opinions of consulting physicians regarding the duration, frequency and intensity of pain; precipitating and aggravating factors; use of medication; and functional restrictions.

Dr. Thompson apparently did not believe plaintiff's condition needed more intensive diagnosis or treatment than a simple prescription for medication. He appeared suspicious that plaintiff saw him only once and then wanted a disability evaluation, and noted that she claimed prescription acetaminophen relieved her pain, while over-the-counter acetaminophen in the same strength did not. He specifically stated that he had the feeling that plaintiff was not as disabled as she believed she was (Tr. 112, 113). Dr. Ash, who saw plaintiff approximately one month later, also noted conflicts in the information she gave regarding the onset and frequency of her pain. Despite some back tenderness, restricted motion, and abnormalities documented by x-rays, the doctor observed that plaintiff could stand and walk without difficulty, could get out of a chair and could get on and off the examination table easily (Tr. 114, 115). This is inconsistent with the testimony of plaintiff's fiancee that she dragged one foot when she walked and had difficulty rising from a chair.

Several months after Dr. Ash's examination, plaintiff complained of arthritis pain to Dr. Magruder. Dr. Magruder found good range of motion in all joints including her back. In a letter dated December 5, 1986, more than a year after plaintiff's alleged onset date, Dr. Magruder stated that "[I]t is obvious that this lady is not disabled[.]" (Tr. 134). Thus, despite any abnormalities which existed in her back, plaintiff's condition was not so serious or limiting as to render her disabled.

The only consultative examiner to find plaintiff disabled was Dr. Szabados. Indeed, Dr. Szabados evaluated x-rays and found physical abnormalities similar to those described by Dr. Ash. On physical examination, however, plaintiff apparently reported pain consistently with every movement, leading the doctor to state she was disabled. Clearly, these complaints of extreme pain to Dr. Szabados are inconsistent with the other reports and records and appeared to be inflated to the ALJ, who noted that false or exaggerated responses during examination may be considered when assessing her disability. *See Russell v. Secretary HEW,* 540 F.2d 353 (8th Cir. 1976).

■ A physician's opinion on the ultimate issue of disability is not binding on the ALJ. *Ward v. Heckler,* 786 F.2d 844, 846 (8th Cir.1986); *Vasquez v. Schweiker,* 701 F.2d 733, 736 (8th Cir.1983). In this case, the weight of the evidence and the record supports the Secretary's decision. It is a well-settled rule of law that the weight to be given a physician's conclusion, whether he be treating or consulting, depends on the extent to which it is supported by complete medical signs and findings and is consistent with the other medical evidence of record. 20 C.F.R. § 404.1526, *Ward v. Heckler, supra,* 786 F.2d at 846–47; *Beasley v. Califano,* 608 F.2d 1162 (8th Cir.1979). Thus, when the physician's opinion is contradicted by the record, the ALJ as the trier-of-fact may discount that which is unsupported and inconsistent. *Davis v. Schweiker,* 671 F.2d 1187 (8th Cir.1982). Indeed, it is the duty of the ALJ, not the courts, to evaluate the evidence and resolve any material conflicts and determine the case accordingly. *Driggins v. Bowen,* 791 F.2d at 124; *Weber v. Harris,* 640 F.2d at 178.

■ The ALJ acknowledged that plaintiff is likely to suffer some pain (Tr. 11, 12). He evaluated plaintiff's subjective complaints and determined that her allegations of the severity of her pain not credible. The ALJ further determined that whatever pain she experienced would not interfere with her ability to do a full range of sedentary work. Although the plaintiff argues that the ALJ determined that she could do light work, such a finding does not appear

in the ALJ's decision. As stated, where there are conflicting allegations and claims, credibility findings are in the first instance for the ALJ. The ALJ's credibility determinations may not be overturned if they are unsupported by substantial evidence. *Hardin v. Heckler*, 795 F.2d at 676; *Johnson v. Heckler*, 744 F.2d 1333, 1338 (8th Cir.1984). In this case, the ALJ did not err in applying the Medical Vocational Guidelines.

The Court finds that the ALJ's decision in denying plaintiff's application for disability benefits under Title II and application for supplemental security income based on Title XVI is supported by substantial and competent evidence on the record as a whole. Accordingly, the Secretary's decision is affirmed.