804 F.Supp. 1117 (1992)
Michael R. HALPIN, Plaintiff,
v.
Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.
No. S91-0004-C.
United States District Court, E.D. Missouri, Southeastern Division.
October 5, 1992.
*1118 *1119 Daniel P. Fall, Schnapp, Graham, Reid & Fulton, Fredericktown, Mo., for plaintiff.
Edwin B. Brzezinski, Sr., Asst. U.S. Atty., St. Louis, Mo., for defendant.

ORDER
LIMBAUGH, District Judge.
IT IS HEREBY ORDERED that the review and recommendation of United States Magistrate Judge Lewis M. Blanton is SUSTAINED, ADOPTED and INCORPORATED herein.
IT IS FURTHER ORDERED that defendant's motion for summary judgment is GRANTED, and plaintiff's motion for summary judgment is DENIED.
IT IS FINALLY ORDERED, ADJUDGED and DECREED that judgment is hereby entered in favor of defendant and against plaintiff in this cause of action.

REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
BLANTON, United States Magistrate Judge.
This is an action under 42 U.S.C. § 405(g) for judicial review of the defendant's final decision denying the plaintiff's application for disability insurance benefits under Title II of the Social Security Act and for supplemental income benefits under Title XVI of the Social Security Act. Both parties have moved for summary judgment and the cause was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b).

Procedural History
On November 9, 1989, plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 et seq. (Tr. 47-46) and supplemental income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq. (Tr. 57-60) alleging disability by reason of impairments to his lower abdomen, lumbosacral area, displacement of the urinary bladder, multiple fractures of the pelvic bones and lumbar area of the spine, and spina bifida. (Plaintiff's Motion for Summary Judgment, pp. 1-2). Plaintiff requested a hearing which was held on April 27, 1990 before Administrative Law Judge (ALJ) Thomas C. Muldoon. (Tr. 16). The ALJ determined that plaintiff was not under a disability at any time during which he met the special earnings requirement. (Tr. 14). The Appeals Council denied review of the ALJ's determination. (Tr. 3-4). Thus, the decision of the ALJ stands as the final determination of the Secretary.

Evidence Before the ALJ
At the hearing before the ALJ the claimant testified as did three other witnesses, the claimant's wife Ruth Elaine Halpin, the claimant's son Michael R. Halpin, Jr., and the claimant's friend Terry Lynn Edwards. (Tr. 17).
The plaintiff was born on November 19, 1956 and was 33 years old at the time of *1120 the hearing. He was married and had one son. (Tr. 19). Plaintiff completed a tenth grade education. (Tr. 19). Plaintiff testified that when he was 16 years old he was severely injured while working in his father's garage. A car fell off the rack and "mashed him against a bench." (Tr. 19). Plaintiff testified that as a result of the accident he suffered broken vertebrae in his back, broken pelvis bones, and numerous internal injuries. (Tr. 19-20). Plaintiff was in the hospital for approximately eight and a half weeks following the accident. (Tr. 20).
Following the accident and plaintiff's discharge from the hospital the plaintiff testified that he started gainful employment again in November 1973 as a stock boy in the Pantry Pride Supermarket in Florida. (Tr. 20). Prior to the injury plaintiff testified he had worked for Brown Shoe Company for about a week as an assembler. (Tr. 20-21). Plaintiff testified that most of his adult life he has been a factory worker and common laborer and has had numerous jobs. (Tr. 21). He stacked lumber at a sawmill on more than one occasion, was a feed mill operator, drove a truck in Indiana, was a roofer, was a crane operator, a maintenance man, a lawn care worker, and a school bus driver. (Tr. 21-23). Plaintiff claimed he had to quit all of these jobs because of back pain after working at each job short periods of time never more than a period of months. (Tr. 23).
The plaintiff testified that his most recent regular employment as a lawn maintenance supervisor for a company under contract with Proctor and Gamble in Cape Girardeau, Missouri was 84 miles from where he lived outside of Fredericktown, Missouri (Tr. 24). A friend, Mr. Edwards, worked in Cape Girardeau with the claimant and the claimant rode with Mr. Edwards. (Tr. 24-25). The plaintiff stated that his pay was continually being cut so it was not worth his while to make the drive for the work. (Tr. 25). He also claimed that back problems while working in Cape Girardeau as a lawn worker caused him to quit. (Tr. 25). He cited one incident shortly before he left the job when he was working on ties and had to be helped up due to pain in his back. (Tr. 25).
Plaintiff also testified that he worked as a school bus driver from April 1, 1989 to May 20, 1989 which required him driving for 45 minutes in the morning and 45 minutes in the afternoon. (Tr. 25-26). He claimed the driving was too rough and it aggravated his back so he quit. (Tr. 26). Plaintiff testified that he has not really been gainfully employed since December 1, 1988. (Tr. 26).
Claimant stated he used to like to hunt and fish but he has not done so for approximately three years. (Tr. 26). He stated that he had sold his hunting guns because he needed the money. (Tr. 33). Plaintiff stated that his son does the yard work and cares for ten head of goats. (Tr. 27). Plaintiff's son was in a state Future Farmers of America competition in Columbia, Missouri but the plaintiff could not attend due to difficulty riding in a car. (Tr. 27, 40). The trip to the hearing was 92 miles and plaintiff stated that they had to stop three times to rest. (Tr. 27).
Plaintiff testified that Dr. Calaban was the physician who initially treated him following the accident. (Tr. 27). Plaintiff explained that Dr. Calaban said there may come a time that he would not be able to work anymore because of the pain which would get progressively worse. (Tr. 23). Plaintiff stated that he has always tried to work and he has now reached a time that he is no longer able to work because of the pain. (Tr. 23). He stated that his back hurt almost continuously if he does anything including walking or lifting. (Tr. 23). He cannot use his arms without hurting his neck and his hips and testicles also hurt. (Tr. 23). He stated that all of this pain, with the exception of the neck pain, is from his 1972 accident. (Tr. 23). The neck pain is from a car accident in 1980 in which the car plaintiff and Mr. Edwards were in was rear ended by a truck and the plaintiff hurt his neck. (Tr. 23). He stated that he suffers from headaches and must use a cane when it is damp outside because the dampness causes his hips to stiffen. (Tr. 23).
*1121 Plaintiff has also been seen by Dr. Lee and Dr. Lents. (Tr. 29-30). Dr. Lents is an orthopedic surgeon and a neurologist. (Tr. 30). The plaintiff did not want to have a myelogram done for fear of the pain, but he said he would have one if the Judge wanted. (Tr. 30).
Plaintiff spends his days trying to get rest. He claims that he can sleep 3 to 5 hours every 24 hours, so he sits on his recliner or is in bed. (Tr. 31). He said that he cannot carry anything and he has trouble dressing himself and getting on and off the commode. (Tr. 31).
Plaintiff also testified that he had hurt his arm in December 1989. (Tr. 31). He stated that he was going to a doctor's appointment and his back went out, he lost control of his legs temporarily and he fell. In the process of falling, he caught himself on the car door and pulled his arm out straight. (Tr. 31). Plaintiff stated that as a result he has trouble using his arm. (Tr. 31).
Plaintiff also claimed to have occasional difficulty with his legs. (Tr. 32). He stated that on the average his legs "go out" on him twice a week. (Tr. 32). He testified that he could probably walk an eighth of a mile before he starts having trouble. (Tr. 32).
Plaintiff's primary pain medication was Ibuprofen in 400 milligram doses every four hours. (Tr. 32). He also occasionally uses Chloral Hydrate to help him sleep with minimal success. (Tr. 33). He claimed that while in the hospital in 1973 following the accident, he became addicted to Morphine and Demerol which is why he does not now take any narcotic drug. (Tr. 33).
In response to questions asked by the ALJ, plaintiff testified that he could probably lift only five pounds. (Tr. 34). He stated that he can only drive once in a while. (Tr. 34). Claimant said that he fills out applications and looks for work every six weeks so he can continue to receive his food stamps from the State of Missouri. (Tr. 34). He stated that he has not received any interviews for any of the jobs he has applied for and that he has told each perspective employer of his impairments. (Tr. 35). He also stated that he would not be able to do these jobs if he was offered one. (Tr. 35).
Ruth Halpin, the claimant's wife, also testified at the hearing. (Tr. 36). She testified that the claimant has always tried to work and that he has progressively gotten worse. (Tr. 36). She stated that her husband cannot do any housework. (Tr. 36). She also testified that her husband is never comfortable despite his continuous efforts to rest. (Tr. 37). She claimed that he forgets things on a daily basis. (Tr. 37). Mrs. Halpin also confirmed the claimant's most recent injury to his arm stating that she was present when it happened. (Tr. 38). She said that when her husband would return home from work in Cape Girardeau he would be real stiff and tired. (Tr. 39). She helps her husband get his shirt on because he can't manage pulling his arms through the shirt and sometimes she has to help him on with his pants. He has difficulty stooping or bending over. (Tr. 39). She also stated that the claimant used a cane. (Tr. 39).
The claimant's son also testified at the hearing. He stated that he knew his father had suffered from back troubles most of his (Michael Jr.'s) life. (Tr. 40). He stated that his father's condition had worsened over the last five years. (Tr. 41).
Mr. Terry Lynn Edwards, a life long friend of the claimant's, also testified. Mr. Edwards was present when the plaintiff was injured in 1973. (Tr. 41). Mr. Edwards worked with the claimant in Cape Girardeau. (Tr. 42). Mr. Edwards said that he did all of the driving to and from Cape Girardeau. (Tr. 42). Mr. Edwards quit working in Cape Girardeau in the fall of 1988 when he accepted another job in Fredericktown. (Tr. 42). Mr. Edwards recalled the occasion when the claimant "broke down" on a tractor while working in Cape Girardeau. (Tr. 42). Mr. Edwards claimed that the claimant was not able to do his fair share of the work, and that he covered for the plaintiff on occasion. (Tr. 42). Mr. Edwards claimed that there were occasions when he would take the claimant *1122 home early and the plaintiff's pay would be cut. (Tr. 43).

Medical Records
Some of the medical records from claimant's 1973 hospitalization are included in the record. The emergency room record recommended that the lumbar spine be x-rayed. (Tr. 139). The diagnosis recorded on the admission form concluded that the claimant suffered from fractures of the left ischium close to acetabulum, the inferior ramus, right pubis, and of the inferior iliac spine, left. Also broken was the transverse process, L-2 and L-3. Additionally, the symphysis pubis was separated, the urinary bladder was displaced and there were multiple abrasions of the buttocks. (Tr. 140). X-rays taken from April through September 1973 confirm the diagnosis. (Tr. 141-149). The discharge report of May 29, 1973 concluded that the claimant also had spina bifida of S-1 and that the patient was progressing well upon discharge. (Tr. 146).
The next medical record on file, a report by Dr. David Lee, M.D., is dated October 11, 1989. (Tr. 150-152). The report concluded that the claimant suffered from post-traumatic lower back and bilateral leg pain, posterior neck pain and occipital headaches. (Tr. 151-152).
An x-ray report by Dr. W.S. Campbell, Jr., M.D., indicated that there was urinary contamination of the pelvis but otherwise the bone scan was normal. (Tr. 153).
A report by Dr. W. Shoettle, D.O., dated November 14, 1989 noted that the lumbar spine was straight, the sacroiliac joints were open, the facet structures were bilaterally symmetrical, the lumbar curve was well maintained, the intervertebral disc spaces were intact and there was no radiographic evidence of fracture of the lumbar spine. (Tr. 160). Spina bifida was also noted. (Tr. 160).
A report by Dr. James Mathis, M.D., dated November 17, 1989, concluded that the plaintiff suffered from chronic L-5 strain, a possible herniated disc and some mild spasm of the paravertebral muscles bilaterally. (Tr. 161).
A follow up report by Dr. Lee, written after a cervical spine x-ray, a lumbar spine x-ray, and a lumbar spine CT scan, is dated November 22, 1989. (Tr. 154-157). The cervical spine x-ray revealed significant straightening of the cervical lordosis, no evidence of vertebral fracture or subluxation and relatively mild degenerative changes involving the apophyseal joints in the inferior cervical spine. (Tr. 154). The lumbar spine x-ray revealed probable spina bifida occulta involving S-1, mild straightening of the lumbar lordosis, minimal curvature with convexity towards the left centering around the L3 level, relatively mild degenerative changes involving the apophyseal joints and mild posterior compression deformity of the L5 body. (Tr. 154). The results of the lumbar spine CT scan indicated no evidence of herniated nucleus pulposus, mild thickening of the ligamentum flavum at the L4-5 level more prominent on the left side, mild degenerative changes involving the apophyseal joints in the inferior lumbar spine, some sclerosis of the joint surfaces, and a small speck of calcium within the wall of the right common iliac artery. (Tr. 155). Dr. Lee noted that the claimant "will have trouble with lifting heavy objects and walking long distances." (Tr. 157).
A residual functional capacity assessment completed by Dr. Harold Ridings, M.D. on December 14, 1989 outlined the doctor's impressions of the plaintiff's physical capabilities. (Tr. 63-70). Dr. Ridings indicated that he felt the claimant could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk a total of about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull without limitations. (Tr. 64). Dr. Ridings also noted that the plaintiff could occasionally climb and stoop and could frequently balance, kneel, crouch and crawl. (Tr. 65). Dr. Ridings finally indicated that pain allegations seemed to be greater than can be documented by physical examination and x-ray findings. (Tr. 68).
Another residual functional capacity assessment was completed by Dr. Donald *1123 Reimer, M.D., on February 26, 1990. (Tr. 81-88). Dr. Reimer agreed with Dr. Ridings that the claimant could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and push and/or pull without limitations. (Tr. 82). Dr. Reimer also indicated that claimant could frequently climb, balance, kneel and crouch while only occasionally stoop and crawl. (Tr. 83). Dr. Reimer also recommended avoiding concentrated exposure to vibration as it may aggravate back discomfort. (Tr. 85). Dr. Reimer also concluded that clinical findings did not support the severity of pain necessary to reduce the residual functional capacity assessment. (Tr. 86).
A report by Dr. Rickey L. Lents, M.D., indicate a diagnosis of chronic lumbosacral pain. (Tr. 168). Dr. Lents concluded that due to the claimant's physical impairments he would not be able to perform any manual type labor again. (Tr. 168). Dr. Lents reasserted his conclusion of disability in his deposition. (Tr. 173-176).
A listing of medications indicated that the plaintiff took Ibuprophen for pain, Chloral Hydrate to help him sleep, Dolobid for back pain, Tetracycline for prostate and testicle problems, and Penicillin for a bladder infection. (Tr. 131-133).

The ALJ's Determination
In his opinion dated May 25, 1990, ALJ Muldoon held that the claimant met the disability insured status requirements of the Act on May 25, 1989, the date the claimant stated he became unable to work, and continues to meet them through December 31, 1992. The ALJ held that the claimant has not engaged in substantial gainful activity since May, 1989. Judge Muldoon stated that the medical evidence established that the claimant had severe neck, back, and leg pain and degenerative arthritis of the cervical spine and lumbar spine, but that he does not have an impairment of combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ felt that the claimant's allegations of totally disabling pain and other symptoms and resulting limitations were not credible. The ALJ found that the claimant had the residual functional capacity to perform work-related activities except for work involving heavy lifting, frequent bending, and walking and standing throughout a workday. 20 C.F.R. §§ 404.1545 and 416.945. The ALJ held that the claimant's past relevant work as a lawn maintenance supervisor did not require the performance of work-related activities precluded by his limitations. 20 C.F.R. §§ 404.1565 and 416.965. The ALJ felt that the claimant's impairments did not prevent the claimant from performing his past relevant work. Therefore, the ALJ decided that the claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of the decision. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

Legal Standards
The Secretary's decision is conclusive upon this Court if it is supported by "substantial evidence," i.e. relevant evidence a reasonable person might accept as adequate to support the decision. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); 42 U.S.C. § 405(g). To determine whether the Secretary's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:
(1) the credibility findings made by the ALJ;
(2) the plaintiff's vocational factors;
(3) the medical evidence from treating and consulting physicians;
(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;
(5) any corroboration by third parties of the plaintiff's impairments; and
(6) the testimony of vocational experts when required which is based on a proper hypothetical question.
Baker v. Secretary of Health and Human Services, 955 F.2d 552, 555 (8th Cir.1992); Taylor v. Bowen, 805 F.2d 329 (8th Cir. 1986); McMillian v. Schweiker, 697 F.2d *1124 215 (8th Cir.1983); Brand v. Secretary of Department of Health, Educ. and Welfare, 623 F.2d 523 (8th Cir.1980).
The Social Security Act defines disability as the inability to engage in substantial gainful activity due to a medically determinable impairment which can be expected to last for a continuous period of at least twelve (12) months or result in death. 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), and 1382c(a)(3)(A); 20 C.F.R. §§ 416.905, 416.908, and 416.909. The plaintiff has the burden of proving that he has a disabling impairment. Russell v. Secretary of Dep't of Health, Educ. & Welfare, 402 F.Supp. 613 (E.D.Mo.1975), aff'd, 540 F.2d 353 (8th Cir.1976).
Pain alone may be disabling within the meaning of the Social Security Act if it is supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to cause pain. Polaski v. Heckler, 739 F.2d 1320, supplemented, 751 F.2d 943 (8th Cir.1984), vacated, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), adhered to on remand, 804 F.2d 456 (8th Cir.1986), cert. denied, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). When evaluating evidence of pain, the Secretary must consider:
(1) the objective medical evidence;
(2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain;
(3) any precipitating or aggravating factors;
(4) the claimant's daily activities;
(5) the dosage, effectiveness and side effects of any medication; and
(6) the claimant's functional restrictions.
In evaluating the evidence of pain, the ALJ is not free to ignore the testimony of the plaintiff "even if it is uncorroborated by objective medical evidence." Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984); Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Millbrook v. Heckler, 780 F.2d 1371 (8th Cir.1985).
Further, in assessing subjective allegations, the ALJ may consider the frequency and type of medication or treatment, daily activities and the claimant's appearance and demeanor at the hearing. Cruse v. Bowen, 867 F.2d 1183 (8th Cir. 1989); Nunn v. Heckler, 732 F.2d 645, 649 (8th Cir.1984).
The weight to be accorded a physician's opinion, whether he is a treating or consulting physician, depends on whether it is supported by clinical observations and findings, and is consistent with other evidence in the record. Ward v. Heckler, 786 F.2d 844, 846 (8th Cir.1986); Waudby v. Bowen, 713 F.Supp. 325, 330 (W.D.Mo. 1989). See also 20 C.F.R. § 404.1527. A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not conclusive in determining disability status, and the opinion must be supported by medically acceptable clinical or diagnostic data. Matthews v. Bowen, 879 F.2d 422, 424 (8th Cir.1989).
The Secretary must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject plaintiff's complaints. Jeffery v. Secretary of Health & Human Servs., 849 F.2d 1129 (8th Cir.1988). It is not enough that the record contains inconsistencies; the Secretary must specifically demonstrate that he considered all of the evidence. Id.; Butler v. Secretary of Health & Human Servs., 850 F.2d 425 (8th Cir.1988). Although credibility determinations are in the first instance for the ALJ and not the court, Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir.1985), the ALJ's credibility assessment must be based upon substantial evidence. Rautio v. Bowen, 862 F.2d 176 (8th Cir.1988); Millbrook v. Heckler, 780 F.2d 1371 (8th Cir.1985). When, as here, a plaintiff claims that the Secretary failed to properly consider subjective complaints of pain, the duty of the court is to ascertain whether the Secretary considered all of the evidence relevant to plaintiff's complaints of pain under the Polaski standards and whether the evidence so contradicts plaintiff's subjective complaints that *1125 the Secretary could discount his testimony as not credible. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir.1987). In making this determination the court must consider evidence which detracts from the Secretary's determination as well as evidence which supports it. Cruse v. Bowen, 867 F.2d 1183 (8th Cir.1989); Jenkins v. Bowen, 861 F.2d 1083 (8th Cir.1988).
The role of the court on review of the ALJ's decision is to determine whether substantial evidence supports the Secretary's findings, not to try the issues de novo. Williams v. Bowen, 790 F.2d 713, 715 (8th Cir.1986). Weighing the evidence is a function of the ALJ, who is the factfinder. Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir.1987). Even if a court finds that the evidence preponderates against the Secretary's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir.1984). In Bland v. Bowen, 861 F.2d 533 (8th Cir.1988), the Eighth Circuit Court of Appeals held:
[t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.
Id., at 535. See also, Metcalf v. Heckler, 800 F.2d 793, 794 (8th Cir.1986); Clark v. Heckler, 733 F.2d at 68. Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion. Hames v. Heckler, 707 F.2d 162, 164 (5th Cir.1983).
In determining whether a claimant is able to return to his past relevant work, the ALJ is required to review the claimant's residual functional capacity and the physical and mental demands of the work that the claimant performed in the past. This requires a careful evaluation of the functions performed in the past job and a determination of whether the claimant can still perform the necessary functions in a significant way. Gunnels v. Bowen, 867 F.2d 1121 (8th Cir.1989) (in determining whether claimant can return to past relevant work, the ALJ has the duty to ascertain the demands of past work in order to compare the claimant's present physical capabilities to those demands); Mitchell v. Schweiker, 551 F.Supp. 1084, 1087 (W.D.Mo.1982); 20 C.F.R. § 416.920(e). In assessing the physical and mental demands of claimant's past work, the ALJ must examine pertinent work activities, including the nature and exertional requirements of the tasks performed. Brown v. Bowen, 794 F.2d 703 (D.C.Cir.1986). The ALJ must make a comparison of actual requirements of the claimant's former work with the claimant's present physical capabilities, including limitations imposed by pain. See Villa v. Heckler, 797 F.2d 794 (9th Cir. 1986); Pearson v. Bowen, 648 F.Supp. 782 (N.D.Ill.1986).

Discussion
The plaintiff argues that the ALJ erred in finding that the he could return to his past relevant work. The plaintiff also contends that the Secretary's finding that the he was not disabled is not supported by substantial evidence on the record as a whole.
The defendant asserts that the decision of the ALJ and the Secretary is supported by substantial evidence on the record as a whole.
The undersigned concludes that the findings of the ALJ and the Secretary are supported by substantial evidence on the record as a whole. The residual functional capacity assessments by both Dr. Reimer and Dr. Ridings support the finding of the ALJ that the claimant can return to his past relevant work as a lawn maintenance supervisor.
The plaintiff relies heavily on the opinion of Dr. Lents which concludes that the plaintiff is not only incapable of returning to his previous work, but also that the plaintiff is incapable of performing any manual labor. Dr. Lents' opinion is not supported by clinical observations and findings *1126 and is inconsistent with other evidence in the record. Ward v. Heckler, 786 F.2d 844; Waudby v. Bowen, 713 F.Supp. 325, 330; 20 C.F.R. § 404.1527. Specifically, Dr. Lents' conclusion is inconsistent with the residual functional capacity assessments of Dr. Ridings and Dr. Reimer. The examinations of the claimant by Dr. Ridings, Dr. Reimer and Dr. Lents were all within a four month period. Therefore, since Dr. Lents' disability conclusion was not supported by objective medical findings and is inconsistent with other evidence in the record, it is proper to accord little weight to his statement.
The undersigned also finds no error in the manner in which the ALJ discredited plaintiff's subjective complaints. In evaluating evidence of pain, the ALJ is not free to ignore the testimony of the plaintiff that is uncontradicted or uncorroborated by the medical evidence. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir.1984); Warner v. Heckler, 722 F.2d 428, 431 (8th Cir.1983). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. Millbrook v. Heckler, 780 F.2d 1371 (8th Cir.1985). Further, in assessing subjective allegations, the ALJ may consider the frequency and type of medication or treatment, daily activities and the claimant's appearance and demeanor at the hearing. Cruse v. Bowen, 867 F.2d 1183 (8th Cir.1989); Nunn v. Heckler, 732 F.2d 645, 648 (8th Cir.1984). Credibility assessments are always in the first instance for the ALJ and not the courts. Tucker v. Heckler, 776 F.2d 793, 796 (8th Cir.1985). The ALJ discounted the claimant's subjective complaints as they were contradicted by the record as a whole. Both Dr. Ridings and Dr. Reimer considered the claimants pain and felt that the subjective complaints did not correspond with the clinical findings and therefore they both refused to adjust their residual functional capacity assessments for pain.
Finally, the undersigned finds that the ALJ's finding that the plaintiff can return to his previous employment as a lawn maintenance supervisor is supported by substantial evidence on the record as a whole. Specifically, the vocational report regarding the claimant's previous job as a lawn maintenance supervisor indicated that the job required 1 hour a day walking, 1 hour a day standing, 2 hours a day sitting, and no bending. (Tr. 104). The vocational report also shows that the heaviest weight lifted was 10 pounds. (Tr. 104). The job description indicated that the claimant's job required the use of mowers, hedge trimmers, a back hoe, a trencher and a cable plow. (Tr. 104). The claimant indicated that he planned all the work duties, filled out the time cards, job records, production and budget reports, and supervised 17 people. (Tr. 104). Plaintiff's duties and exertional requirements of the job all support the ALJ's decision that he can perform his past work.
Therefore, the Secretary's finding that the claimant is not disabled due to his ability to return to his previous employment is supported by substantial evidence on the record as a whole and should be upheld.

RECOMMENDATION
IT IS HEREBY RECOMMENDED that the defendant's motion for summary judgment be granted and the plaintiff's motion for summary judgment be denied.
The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless and extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356 (8th Cir.1990).