Michael R. HALPIN, Appellant,

v.

Donna E. SHALALA, M.D.,* Secretary of Health and Human Services, Appellee.

No. 92–3423.

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1993.

Decided July 16, 1993.

---

* Donna E. Shalala is substituted for former Secretary of the Department of Health and Human Services Louis W. Sullivan, M.D. *See* Fed. R.App.P. 43(c).

Daniel P. Fall, Fredericktown, MO, for appellant.

Edwin Brzezinski, Asst. U.S. Atty., St. Louis, MO, and Harry B. Mallin of HHS, Kansas City, MO, for appellee.

Before WOLLMAN, Circuit Judge, ROSS, Senior Circuit Judge, and KOPF,** District Judge.

ROSS, Senior Circuit Judge.

Appellant Michael R. Halpin appeals from the district court's denial of disability insurance benefits under Title II of the Social Security Act, and supplemental security income benefits under Title XVI of the Social Security Act (the Act) 804 F.Supp. 1117. Appellant contends on appeal that the district court erred in its conclusion that appellant was not under a disability as defined by the Act. He claims that the ALJ erroneously concluded that his back injury does not meet or equal one of the impairments listed in the regulations, improperly discounted his subjective complaints of pain, and erroneously found that he could still perform his past work as a lawn maintenance supervisor. After a careful review of the briefs and record, we reverse.

The medical records show that on April 11, 1973, at the age of 16, appellant suffered a serious injury to his back when a car he was working on rolled forward, crushing him against a bench. Examination revealed multiple fractures of the pelvis bones, fractures in the lumbar spine, and numerous internal

** THE HONORABLE RICHARD G. KOPF, United States District Judge for the District of Nebraska, sitting by designation.

injuries. Appellant was hospitalized for approximately eight weeks following the accident and was only able to return to work after six months of further recuperation. Appellant's treating physician informed him that his condition was of a degenerative nature and would gradually worsen over time.

During most of his adult life, appellant has had numerous jobs as a factory worker and laborer. He stacked lumber at a sawmill, was a feed mill operator, drove a truck, was a roofer, a crane operator and a maintenance man. Most recently, appellant was a lawn maintenance supervisor. He maintains he had to quit his most recent job, as well as others, because of the severe back pain he suffered.

According to the medical records, appellant's first visit to a physician after his accident occurred on October 11, 1989, when he was examined by Dr. David Lee, a neurologist. Dr. Lee's report concluded that the appellant suffered from post-traumatic lower back and bilateral leg pain, as well as posterior neck pain and occipital headaches, which he suffered as a result of a 1980 car accident.

X-rays performed by Dr. Lee on November 7, 1989, revealed, among other things, a significant straightening of the cervical lordosis, mild degenerative changes involving the apophyseal joints of the cervical spine, mild straightening of the lumbar lordosis, mild degenerative changes of the lumbar spine, mild posterior compression deformity of L5, and probable spina bifida occulta involving S1. As to appellant's functional ability, Dr. Lee concluded the appellant would have trouble lifting heavy objects and walking long distances. Dr. James Mathis, a surgeon and general practitioner, examined appellant in November 1989 and diagnosed chronic L5 strain, a possible herniated disc and some mild spasms of the paravertebral muscles bilaterally. Lumbar spine x-rays showed no abnormalities other than spina bifida occulta of S1.

A residual functional capacity assessment completed by Dr. Harold Ridings on December 14, 1989, concluded that the appellant could occasionally lift 50 pounds, frequently lift 25 pounds, stand and/or walk a total of about six hours in an 8–hour workday, sit about six hours in an 8–hour workday, and push or pull without limitation. Dr. Ridings indicated that appellant's pain allegations seemed to be greater than could be documented by clinical findings and would not further reduce his residual functional capacity. Dr. Ridings diagnosed degenerative arthritis of the lumbar spine.

A second residual functional capacity assessment was performed by Dr. Donald Reimer on February 26, 1990. Dr. Reimer agreed with all of Dr. Ridings previous findings and additionally recommended that appellant avoid concentrated exposure to vibration in order to avoid back discomfort. Dr. Reimer also concluded that clinical findings did not support the severity of the reported pain necessary to reduce the residual functional capacity assessment.

Finally, Dr. Rickey Lents, an orthopedic surgeon, examined appellant on April 3, 1990, and diagnosed chronic lumbosacral pain and concluded that appellant, due to "a variety of reasons not all of which are physical," will not be able to perform any manual labor again.

Appellant testified before the administrative law judge (ALJ) that his back hurts almost continuously if he does anything, including walking or lifting. He cannot use his arms without hurting his neck and back. He cannot carry anything and has trouble dressing himself. He stated that he suffers from headaches and that he uses a cane occasionally for pain in his hips, particularly in damp weather. He claims he spends his days trying to rest, and claims that he can only sleep three to five hours every 24 hours because of discomfort. His legs "go out" on him about twice a week; in fact, one time he fell and injured his arm when he lost control of his legs. Appellant testified that he used to enjoy fishing and hunting but is no longer able to do so because of the discomfort he suffers as a result. He claims that simple or routine movements cause or aggravate the pain, forcing him to severely limit his activities. Appellant's son was in a state Future Farmers of America competition in Columbia, Missouri, but appellant was unable to attend because of the pain he experiences

after driving even short distances in the car. Appellant stated that his primary pain medication is Ibuprofen 400 mg. every four hours. He claimed he does not take narcotics for the pain because he became addicted to Morphine and Demoral while in the hospital following the 1973 accident.

The ALJ determined that appellant has impairments which significantly restrict his ability to perform basic work activities and that the medical evidence establishes that the claimant has severe neck, back and leg pain and degenerative arthritis of the cervical spine and lumbar spine. Nevertheless, the ALJ concluded that appellant does not have an impairment or combination of impairments listed in, or medically equal to, the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and that appellant's allegations of totally disabling pain and resulting limitations were not credible. The ALJ found that the appellant had a residual functional capacity to perform the physical exertion requirements of work-related activities, except for work involving heavy lifting, frequent bending, and walking and standing throughout a workday. The ALJ held that the appellant's past relevant work as a lawn maintenance supervisor, which involves the operation of lawn mowers, hedge trimmers, back hoes, trenchers and a cable plow, did not require the performance of work-related activities precluded by his limitations. Therefore, the ALJ concluded that the appellant was not under a "disability" as defined in the Social Security Act. 20 C.F.R. § 404.-1520(e).

On review, the magistrate judge concluded that the ALJ's findings are supported by substantial evidence in the record as a whole. The magistrate judge held that the residual functional capacity assessments support the ALJ's finding that the appellant can return to his past relevant work as a lawn maintenance supervisor. The magistrate judge ignored the findings of Dr. Lents as being inconsistent with the residual functional capacity assessments of Dr. Ridings and Dr.

Reimer. Further, the magistrate judge found no error in the manner in which the ALJ discredited appellant's subjective complaints of pain as they were contradicted by the record on a whole, indicating that both Drs. Ridings and Reimer felt the subjective complaints of pain did not correspond with the clinical findings. The magistrate judge's review and recommendation were subsequently adopted by the district court and this appeal followed.

■ The Secretary argues on appeal that the appellant failed to object to the magistrate judge's review and recommendation as required by 28 U.S.C. § 636(b)(1)[1], and therefore that he cannot challenge the magistrate judge's factual determinations on appeal. This court has established that

> plaintiff has not waived his right to appeal by failing to object when the questions involved are questions of law or mixed questions of law and fact, or when neither the local district court rule nor the magistrate's notice has clearly informed the plaintiff that failure to object to the magistrate's report will result in waiver of the right to appeal.

*Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir.1990) (per curiam) (quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir.1986)).

The magistrate judge issued his review and recommendation on September 1, 1992, and advised the parties they had eleven days to file written objections, pursuant to 28 U.S.C. § 636(b)(1). He further indicated that "failure to file timely objections may result in a waiver of the right to appeal questions of fact." No objections were filed and the district court adopted the magistrate judge's proposed findings and recommendations, entering judgment on October 5, 1992.

Here, the parties were clearly informed, by virtue of the magistrate judge's order, of the requirement to make written objections in order to preserve their appeal. Although the appellant failed to make such written objec-

---

1. 28 U.S.C. § 636(b)(1) provides in part:

    Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of

    the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.

tions, his appeal is nonetheless properly before this court, as the issue raised, whether the magistrate judge properly applied the *Polaski* standards in discrediting appellant's subjective complaints of pain, is a mixed question of law and fact and thus is entitled to de novo review.

In the present case, the ALJ found, and the magistrate judge agreed, that appellant's subjective complaints of pain were not credible. The ALJ discredited appellant's testimony based on his conclusion that the subjective complaints of pain were not supported by the objective clinical evidence. In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984) (subsequent history omitted), this court established that the ALJ must consider, in addition to objective medical evidence, any evidence relating to appellant's prior work record and the observations of third parties and treating and examining physicians regarding such matters as daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage and effectiveness of medications; and functional restrictions. Although an ALJ may discount the subjective complaints of pain if there are inconsistencies in the evidence as a whole, he may not do so solely because the complaints are not fully supported by the objective medical evidence.

Although the ALJ in the instant case stated that he considered the appellant's subjective complaints pursuant to these factors, it appears that the only factor to which the ALJ gave any significant weight was the absence of any objective medical evidence to support the degree of severity of appellant's subjective complaints. Although he noted that the appellant has only been taking Ibuprofen for pain, the ALJ failed to note that appellant was unable to take narcotic pain medication because of his former addiction to such medication after his 1973 accident. Further, although the ALJ found the testimony of appellant's wife, son and friend to be credible, he held that the probative value of this testimony did not outweigh the medical findings and other evidence in the record. Although the ALJ stated that there exist inconsistencies in the record as a whole, in actuality there is no evidence to dispute appellant's claim that he spends the majority of his day and night simply attempting to get comfortable and that his discomfort significantly restricts any kind of physical activity whatsoever. Although the ALJ found that the examinations by Dr. Lee, Dr. Mathis, and Dr. Lents establish that the appellant has clinical findings consistent with neck, back and leg pain, he ignored this conclusion based on the residual functional capacity assessments in which Drs. Ridings and Reimer concluded that the objective evidence does not support the allegations of pain.

Such strict reliance on the absence of objective medical evidence is, as we have repeatedly held, contrary to the law of this circuit. *See Beeler v. Bowen*, 833 F.2d 124, 127 (8th Cir.1987). We conclude that the Secretary's findings on the credibility of appellant's testimony regarding his subjective complaints of pain are not supported by substantial evidence in the record as a whole, nor do they comply with the mandate set forth in *Polaski*. Accordingly, we reverse and remand to the district court, with instructions to remand this case to the Secretary for further proceedings consistent with the views expressed in this opinion.